UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., | CASE NO. 13-00924 |
|       Plaintiff, | |
| v. | JUDGE BERRIGAN |
| TRACY L. RANSIER; and MID CITY PARTNERS, L.L.C., d/b/a RED DOOR LOUNGE, | MAGISTRATE JUDGE CHASEZ |
|       Defendants. | |

## DIRECTV, LLC'S THIRD PARTY COMPLAINT

NOW INTO COURT, through undersigned counsel, comes DIRECTV, LLC ("DIRECTV"), third party defendant and counterclaimant in the above referenced action, who acting as Third Party Plaintiff, respectfully avers as follows:

### THE PARTIES

1. Made Third Party Defendants herein are:

a. Gia Van Tran ("Tran"), an individual of the age of majority believed to be domiciled and residing in Houston, Texas.

b. Commasia Connection, LLC ("Commasia"), a Louisiana limited liability company licensed and doing business in the State of Louisiana, with its principal place of business at 14349 Chef Menteur Highway, Suite B, New Orleans, LA 70129. Upon information and belief, Commasia Connection, LLC has two members, Gia Van Tran and Lu Tran, who both

list domiciles at 14349 Chef Menteur Highway, #B, New Orleans, Louisiana 70129 with the Louisiana Secretary of State, but Gia Van Tran is believed to be domiciled in Houston, Texas.

      c. First Financial, a foreign insurer believed to have provided commercial general liability insurance to Commasia Connection, LLC, Commasia Communications, and/or its affiliated companies.

2. Third Party Plaintiff, DIRECTV, LLLC is a limited liability company organized under the laws of the State of California. DIRECTV is the nation's leading direct broadcast satellite system, delivering hundreds of channels of television and other programming (the "Satellite Programming") to more than 20 million customers in the United States. DIRECTV programming is offered via subscription and pay-per-view, available to both residential and commercial customers. Through its operations, DIRECTV provides direct broadcast satellite programming to subscribers with specialized satellite hardware who pay for the programming. DIRECTV holds proprietary rights to the Satellite Programming it transmits, and DIRECTV is the owner of and/or a lawfully licensed distributor for such Satellite Programming.

3. On information and belief, defendant Tran is the owner, principal and/or member of Commasia and in performing or failing to perform the acts alleged herein, was acting individually, as well as an alter ego of Commasia.

4. DIRECTV does not presently know the true names and capacities of the Defendants sued herein as DOES 1 through 10 and therefore is suing those Counter-Defendants by fictitious names pursuant to Federal Rule of Civil Procedure 19. DIRECTV will amend its counterclaims to allege the true identities of DOES 1 through 10 once they have been ascertained. DIRECTV is informed and believes that each of the Counter-Defendants sued as

DOES 1 through 10 is in some manner responsible for the occurrences, injuries and other damages alleged in this counterclaim.

5. On information and belief, at all times mentioned herein, each of Tran, Commasia, and DOES 1 through 10, was the agent, co-conspirator, and/or alter ego of the other, and in acting as alleged herein, was acting within the course and scope of such agency, conspiracy, and/or relationship. On information and belief, each defendant shared a unity of interest and commingled assets such that it would sanction a fraud or promote an injustice to uphold corporate distinctions and allow any defendant to escape liability for damages suffered by plaintiffs.

## JURISDICTION AND VENUE

6. This Court has jurisdiction of the subject matter to this action as this lawsuit is brought pursuant to, *inter alia*, the Cable Communications Policy Act of 1984, 647 U.S.C. §§521, *et seq.* (the "Act"). This Court has jurisdiction of the subject matter to this action under 28 U.S.C. § 1331, pursuant to which the United States District Courts have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States

7. This Court has jurisdiction of the subject matter to this action under 28 U.S.C. § 1367, pursuant to which the United States District Courts have supplemental jurisdiction over claims that are part of the same case or controversy over which the district courts have original jurisdiction. In addition to the claims in this Complaint brought pursuant to the Act, the Complaint in the underlying lawsuit similarly alleges violations of the Act. As such, the District Court in the underlying action has original jurisdiction of the subject matter under 28 U.S.C. § 1331.

8. This Court has personal jurisdiction over the parties in this action. The Defendants to this action have independently transacted business in the State of Louisiana, and certain activities of the Defendants giving rise to this action took place in the State of Louisiana. More particularly, Defendants' acts of improperly installing a residential DIRECTV account took place within New Orleans, Louisiana and within the Eastern District of Louisiana. Moreover, Commasia has its principal place of business within the State of Louisiana; thus, this Court has personal jurisdiction over Commasia and its principal, Tran.

9. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and 28 U.S.C. §84(c)(2) as a substantial part of the events or omissions giving rise to the claim occurred within the Eastern District of Louisiana.

## GENERAL ALLEGATIONS

### The Complaint and Third-Party Complaint

10. DIRECTV has been served as a defendant by third-party plaintiffs Tracy L. Ransier ("Ransier") and Mid City Partners, LLC d.b.a. Red Door Lounge ("Red Door") in connection with an action entitled: *Joe Hand Promotions, Inc., v. Tracy Ransier*, *et al.* (U.S. District Court for the Eastern District of Louisiana, case no. 13-00924) (the "Complaint").

11. The Complaint alleges, among other things, that Ransier and the Red Door, a commercial establishment, violated 47 U.S.C. § 605 and 47 U.S.C. § 553 by displaying a broadcast of "UFC 114: Rampage v. Evans" (the "Broadcast"), without the proper commercial license. A true and correct copy of the Complaint is attached as Exhibit "A."

12. In response to the Complaint, Ransier and Red Door filed a Third-Party Complaint (the "Red Door Complaint") against DIRECTV alleging, among other things, that DIRECTV improperly installed DIRECTV residential satellite service and equipment at Red

4

Door causing Ransier to unwittingly violate federal law by displaying the Broadcast. A true and correct copy of the Red Door Third Party Complaint is attached as Exhibit "B."

### DIRECTV Protects Its Programming

13. DIRECTV undertakes significant effort to protect its programming. In order to prevent unauthorized entities and persons from viewing its Satellite Programming, DIRECTV encrypts its satellite transmissions. Upon payment of the appropriate subscription or license fees, and upon the acceptance by the subscriber of DIRECTV's terms and conditions, which are provided to the subscriber in DIRECTV's customer agreement, DIRECTV authorizes and enables the subscriber to receive, unscramble and view the Satellite Programming.

14. DIRECTV does not permit DIRECTV subscribers to display DIRECTV programming in a commercial setting unless the particular subscriber maintains a commercial DIRECTV account. DIRECTV provides services to homes based on residential rates and to commercial establishments under commercial rates. Commercial rates are typically much higher and are based on a variety of factors.

15. DIRECTV does not provide closed-circuit programming, such as the Broadcast, for commercial display; rather, a commercial DIRECTV customer must acquire the right to display such programming directly from the closed-circuit programming provider.

### Commasia's Improper Installation

16. DIRECTV engages independent contractors to (i) market, promote and advertise the leasing of DIRECTV systems and the sale of DIRECTV Programming Packages ("Subscriptions") to consumers; and (ii) perform the installation, maintenance and repair of DIRECTV Systems.

17. Independent contractors engaged by DIRECTV are authorized to market, promote and advertise and/or install, maintain and repair, only those DIRECTV systems and/or Subscriptions specifically set forth in the Independent Retailer Agreement between DIRECTV and the independent contractor.

18. On September 25, 2008, DIRECTV engaged Commasia as an independent contractor pursuant to the terms of an Independent Retailer Agreement between DIRECTV and Commasia.

19. Pursuant to the terms of the Agreement, among other things, Commasia was to engage in the marketing, promotion, advertisement, and installation of DIRECTV systems at residential locations. Commasia was not authorized to deal with commercial locations for any purpose related to DIRECTV systems and/or DIRECTV Subscriptions.

20. The Agreement did not permit Commasia to set up or install commercial DIRECTV accounts.

21. On or about August 6, 2009, Ransier and/or Red Door ordered DIRECTV satellite television service. The address for the account was provided as 206 North Carrollton Avenue, New Orleans, Louisiana.

22. On or about August 11, 2009, Commasia installed DTV's satellite service at Red Door. Red Door is a commercial establishment, a bar. Notwithstanding the obvious nature of the Red Door's business, and the limitations set forth in the Agreement, Commasia installed a residential DIRECTV account at Red Door.

23. Commasia knew it was not authorized to install commercial accounts and that it was not authorized to install residential accounts in commercial establishments, yet it ignored those express contractual limitations in installing a DIRECTV account at Red Door.

24. Ransier accepted DIRECTV's Residential Agreement, which provides terms of service that are different than those in DIRECTV's Commercial Agreement, and specifically that DIRECTV "provide(s) Service only for your private non-commercial use, enjoyment and home viewing. The programming may not be viewed in areas open to the public or in commercial establishments."

25. DIRECTV activated Red Door's DIRECTV service, account number 076107758, on or about August 11, 2009. That activation was at Commasia's request.

26. After the residential account at Red Door was activated, Red Door displayed DIRECTV programming to its customers in a commercial setting without proper authorization.

27. On May 29, 2010, the Broadcast was ordered via Ransier's DIRECTV residential account (number 076107758) for transmission to a satellite receiver located at Red Door. The Broadcast was then displayed in the Red Door commercial setting. That display was without authorization.

## COUNT 1

### (Breach of Contract)

### Against All Defendants

28. DIRECTV repeats and incorporates herein by reference the preceding paragraphs as if fully set forth.

29. The Agreement provides that "RETAILER [Commasia] may market, promote and solicit Subscriptions only for the DIRECTV Programming Packages identified in Exhibit "A" attached hereto, and not any other programming packages or services DIRECTV may offer." Each of the programming packages identified in Exhibit A was residential, not commercial.

Pursuant to the Agreement, Commasia was only allowed to work on and/or install residential DIRECTV accounts.

30. The Agreement provides that "[i]n all of its activities hereunder for DIRECTV, RETAILER shall conduct itself in a commercially reputable and ethical manner, shall comply with all applicable laws…and shall engage in no deceptive sales practice or other practice which impugns DIRECTV's commercial reputation and goodwill."

31. The Agreement further provides that the "RETAILER shall not (a)mislead, deceive or otherwise misrepresent customers in connection with the terms and conditions of the Consumer Offers, the DIRECTV Programming Packages (or receipt thereof) or the Equipment Lease Addendum…"

32. The Agreement also provides that "DIRECTV may determine the content, pricing, terms, and conditions of the Consumer Offers, DIRECTV Service and DIRECTV Programming Packages in its sole and absolute discretion. RETAILER shall not represent that the Consumer Offers, the DIRECTV Service or the DIRECTV Programming Package may be obtained on any different terms, rates or conditions, shall not impose additional or different terms and shall not offer customers any discounts, rebate, or other material benefits in consideration for subscribing to them, except as expressly authorized by DIRECTV in writing."

33. The Agreement continues to state "RETAILER shall submit an Order therefor, which Order shall include information as required under the Order Procedures, including but not limited to, (i) personal information of the customer….; and (ii) the number and types of DIRECTV Systems to be provided (the "Leased Equipment")."

34. The Agreement requires that installation services shall be provided by the RETAILER "in accordance with and consistent with the standard professional installation guidelines (the 'SPIG')."

35. The Agreement also states that "RETAILER agrees to ensure that any installers utilized by RETAILER are properly trained, licensed and authorized to perform the installation services in connection with the DIRECTV Systems."

36. Upon information and belief, Defendants, and/or Defendants' employees and/or agents knew or should have known that Red Door was a commercial location.

37. By installing a residential DIRECTV account at Red Door, Defendants offered for sale, and installed DIRECTV service to a commercial establishment without authorization from DIRECTV. Further, Defendants misrepresented to both DIRECTV and Red Door that they were authorized to perform these services. Those acts and misrepresentations violate the terms of the Agreement. Defendants acts and misrepresentations were performed intentionally and in order to improperly obtain a financial gain from DIRECTV.

38. Due to Defendants breach of the Agreement, DIRECTV has been damaged in an amount to be proven at trial.

## COUNT 2

**(Breach of Contract)**

**Against All Defendants**

39. DIRECTV repeats and incorporates herein by reference the preceding paragraphs as if fully set forth.

40. Pursuant to the Agreement, the RETAILER is entitled to certain financial incentives for each installation performed by the RETAILER. (Ex. C at ¶6.4(d) and Ex. C.)

41. Pursuant to the Agreement, the RETAILER is entitled to a commission for each subscriber activated as a result of RETAILER's services in procuring the order of a DIRECTV System and/or Subscription.

42. The aforementioned commissions and financial incentives are based on "full uninterrupted purchase of the DIRECTV Programming Package" by a subscriber. If a subscriber terminates, cancels or disconnects the Programming Package for which the RETAILER has been paid an installation incentive or commission, "DIRECTV may chargeback to RETAILER the portion of the Prepaid Programming Commission and/or Installation Incentive as described in Exhibit D.

43. As of October 26, 2012, Defendants accrued $62,269.25 in "chargebacks." That amount had previously been paid to Defendants as commission and/or installation incentives. However, because the subscribers at issue either required additional support or subsequently terminated, disconnected and/or cancelled DIRECTV service, the incentive and/or commission funds previously paid to Defendants were required to be returned to DIRECTV.

44. DIRECTV notified Defendants of their obligation to return the chargeback amounts to DIRECTV on numerous occasions. Most recently, on or about October 26, 2012, DIRECTV sent Defendants an invoice in the amount of $62,269.25. Defendants failed to pay the chargeback amounts due, thereby breaching the Agreement.

45. Due to Defendants' failure to pay DIRECTV the chargeback amount, DIRECTV has been damaged in an amount to be proven at trial, but not less than $62,269.25.

//

## COUNT 3

### (Fraud)

### Against All Defendants

46. DIRECTV repeats and incorporates herein by reference the preceding paragraphs as if fully set forth.

47. The Agreement provides that the RETAILER is responsible for submitting a customer's Order to DIRECTV and providing, among other things, the customer's name, address, and the number and types of DIRECTV Systems to be provided to the customer.

48. The agreement further provides that the RETAILER shall enter the customer's order via the DIRECTV RETAILER Website. As such, upon the RETAILER's entry of the customer's information, including the location and the DIRECTV System and Subscription ordered, the RETAILER qualifies to receive credit for the account activation.

49. Pursuant to the Agreement, the RETAILER is entitled to certain financial incentives for each installation performed by the RETAILER.

50. Pursuant to the Agreement, the RETAILER is entitled to a commission for each subscriber activated as a result of RETAILER's services in procuring the order of a DIRECTV System and/or Subscription.

51. Additionally, the Agreement provides that the RETAILER shall be paid Continuing Service Fees by DIRECTV in connection with the RETAILER's "promotional support and services to Qualifying Subscribers." The Continuing Service Fees are paid by DIRECTV on a monthly basis and depend on the number of subscribers procured by the RETAILER that are receiving an Approved Programming Package. Approved Programming Packages are limited to residential packages, as set forth in the Agreement.

52. The Agreement further provides that if the RETAILER does not follow the appropriate order procedures, the RETAILER may not be entitled to the above described compensation (commissions, continuing service fees, and installation incentives).

53. On or about August 6, 2009, Defendants entered Red Door's order for a DIRECTV System and Subscription via the DIRECTV RETAILER Website. By entering the order, Defendants fraudulently represented to DIRECTV that Red Door was a residential location, that the Red Door account was a residential account, and that Commasia was performing an installation at a residential location.

54. Defendants knew, or should have known, that DIRECTV would rely on its representations regarding the nature of the Red Door account.

55. DIRECTV reasonably relied on the representations made by Defendants regarding the nature of the Red Door account. In reliance on these misrepresentations, DIRECTV paid Commasia the aforementioned commissions, continuing service fees, and installation incentives.

56. The representations made by Defendants were in fact false, as Red Door is a commercial establishment. Defendants were not authorized to install any DIRECTV System at this location and was not authorized to offer and/or sell any DIRECTV Subscription to Red Door.

57. Defendants' actions and misrepresentations caused actual damage to DIRECTV in an amount to be determined at trial.

//

## COUNT 4

### (Contractual Indemnity)

### Against All Defendants

58. DIRECTV repeats and incorporates herein by reference the preceding paragraphs as if fully set forth.

59. The Agreement contains an indemnification clause which requires Defendants to indemnify DIRECTV "from third party claims and resulting damages, costs, and other liabilities arising out of the indemnifying party's breach or alleged breach of its representations, warranties, covenants or obligations under this Agreement, negligence, or other wrongful conduct."

60. The Red Door Complaint alleges that DIRECTV is liable for damages in connection with the Complaint filed against Red Door and Ransier.

61. In fact, Defendants are responsible for causing the damages and injuries, if any, as alleged by the Red Door Complaint.

62. The damages alleged in the Red Door Complaint, if any, were proximately caused by the fault of the Defendants and do not flow in any way from any act or omission on the part of DIRECTV.

63. DIRECTV is entitled to absolute indemnity from Defendants with respect to any amount of damages, as well as any costs and attorneys' fees, awarded to Red Door and/or Ransier.

//

## COUNT 5

### (Equitable Indemnity)

### Against All Defendants

64. DIRECTV repeats and incorporates herein by reference the preceding paragraphs as if fully set forth.

65. The damages alleged in the Red Door Complaint, if any, were proximately caused by the fault of the Defendants and do not flow in any way from any act or omission on the part of DIRECTV.

66. DIRECTV is entitled to absolute indemnity from Defendants with respect to any amount of damages, as well as any costs and attorneys' fees, awarded to Red Door and/or Ransier.

## COUNT 6

### (Negligence)

### Against All Defendants

67. DIRECTV repeats and incorporates herein by reference the preceding paragraphs as if fully set forth.

68. Defendants had a duty to install the satellite system in a commercially reasonable manner.

69. By knowingly installing the DIRECTV satellite system as residential as opposed to commercial, without authorization from DIRECTV and in plain breach of the terms of the Agreement, Defendants breached their duty to install the satellite system in a commercially reasonable manner.  This breach caused Red Door to display the Broadcast without the appropriate license and subsequently file a third party complaint against DIRECTV.

70. DIRECTV been damaged due to Defendants' breach by having to defend a civil action and is entitled to damages in an amount to be proven at trial.

## COUNT 7

**(Damages for Violations of Cable Communications Policy Act)**

**[47 U.S.C. § 605(e)(3)(C)]**

**Against All Defendants**

71. DIRECTV repeats and incorporates herein by reference the preceding paragraphs as if fully set forth.

72. DIRECTV alleges on information and belief, that Defendants effected unauthorized interception and receipt of Satellite Programming by improperly installing a residential, rather than a commercial, DIRECTV account at Red Door and thus allowing Red Door to order pay-per-view or closed-circuit programming for residential use and subsequently display the programming in a commercial establishment for commercial gain without authorization, on at least one occasion.

73. Defendants's acts violate federal law. Defendants illegally and without authorization assisted in the unauthorized interception, reception or exhibition of Satellite Programming transmitted by DIRECTV. This practice is explicitly prohibited by 47 U.S.C. § 605(a).

74. DIRECTV has been aggrieved by Defendants' violation of 47 U.S.C. § 605 and is authorized to institute this action against Defendants pursuant to 47 U.S.C. § 605(e)(3)(A).

75. Defendants' violations of 47 U.S.C. § 605 have injured DIRECTV's ability to maximize the revenues which it seeks to derive from the Satellite Programming, as DIRECTV has been deprived of the benefit of commercial revenues for the Satellite Programming

displayed. Moreover, Defendants' violations of 47 U.S.C. § 605 have forced DIRECTV to defend a civil lawsuit. DIRECTV is entitled to costs, reasonable attorneys' fees, and actual damages suffered.

76. Alternatively, DIRECTV is entitled to statutory damages in an amount not less than $1,000 or more than $10,000 for each violation of 47 U.S.C. § 605(a).

77. DIRECTV will further show that Defendants' conduct in violation of 47 U.S.C. § 605(a) was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain. Due to Defendants' willful conduct, DIRECTV is entitled to statutory damages in an amount not less than $10,000 and up to $100,000 for each willful violation of 47 U.S.C. § 605(a).

## COUNT 8

**(Damages)**

**Against All Defendants**

78. Upon information and belief, at all times pertinent hereto, defendant First Financial was the insurer of Commasia.

79. As the insurer of Commasia, First Financial is liable for any and all negligence, breach, errors, omissions and/or liabilities raised in these proceedings, as well as any additional insurance and/or indemnification obligations required pursuant to the Agreement.

## PRAYER

WHEREFORE, third-party plaintiff DIRECTV prays that this Court enter judgment in their favor and against Defendants and:

1. Declare that Defendants' assistance in the unauthorized interception, reception, and public commercial exhibition of DIRECTV's electronic communications was in

violation of 47 U.S.C. §605, and that such violations were committed willfully and for purposes of direct or indirect commercial advantage and private financial gain;

2. In accordance with 47 U.S.C. §605(e)(3)(B)(I), enjoin Defendants, its owners, officers, agents, servants, employees and attorneys, and all persons in active concert or participation with any of them from any further violations;

3. Award DIRECTV statutory damages in the amount of $10,000 for each violation of 47 U.S.C. §605, plus an additional $100,000 for each violation pursuant to 47 U.S.C. §605(e)(3)(C)(ii); alternatively, DIRECTV requests judgment for actual damages, plus damages equal to any profits attributable to the Defendants' violations of 47 U.S.C. §605;

4. Award DIRECTV damages it suffered as a result of Defendants' breach of the Independent Retailer Agreement, as such damages are established at trial, including but not limited to the $62,269.25 owed by Defendants as unpaid chargebacks.

5. Award DIRECTV indemnity in the amount of damages, as well as any costs and attorneys' fees, awarded to Red Door and/or Ransier;

6. Award DIRECTV punitive damages; and

7. Award DIRECTV its costs, including reasonable attorneys' fees, prejudgment interest and post-judgment interest, and such other relief to which DIRECTV may be entitled.

| | |
|---|---|
| CERTIFICATE OF SERVICE | Respectfully Submitted, |

I hereby certify that a copy of the above and foregoing has been served upon all counsel of record by the service method indicated below:

[  ] U.S. Mail
[X] Electronic Mail
[  ] Hand Delivery
[  ] Facsimile
[X] ECF Notification

This 10th day of January, 2014.

   /s/ Ryan G. Baker

**BAKER MARQUART LLP**

   /s/ Ryan G. Baker
Ryan G. Baker (CA No. 214036)
10990 Wilshire Boulevard, Fourth Floor
Los Angeles, CA 90024
Telephone: (424) 652-7800
Facsimile: (424) 652-7850
Email: rbaker@bakermarquart.com
*Counsel for Third Party Defendant and Counterclaimant, DIRECTV, LLC*

**STAINES & EPPLING**

THOMAS J. EPPLING (14255)
SARA P. SCURLOCK (30051)
3500 North Causeway Boulevard, Suite 820
Metairie, LA 70002
Telephone: (504) 838-0019
Facsimile: (504) 838-0043
Email: tommy@staines-eppling.com
*Counsel for Third Party Defendant and Counterclaimant, DIRECTV, LLC*